IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYLE BREHM, on behalf of Willard F. Brehm, Gladys M. Brehm, the Willard F. Brehm Revocable Trust and the Gladys M. Brehm Revocable Trust, REX WELDON, on behalf of Nancy Weldon, Robert Clark Weldon and the Robert Clark Weldon and Nancy Weldon Trust, JILL SCHUNEMAN, on behalf of herself and the Jill Schuneman Living Trust, and DAVID BUCKLEY, on behalf of himself, the Robert L. McKissick Irrevocable Trust and the Brenda L. Buckley Revocable Trust, collectively on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br>    v.<br><br>CAPITAL GROWTH FINANCIAL, LLC, BRIAN SCHUSTER, ENGLE & SCHUSTER FINANCIAL, INC., AMERICAN CAPITAL CORPORATION, ROYAL PALM CAPITAL GROUP, INC., ALAN JACOBS, MICHAEL JACOBS, GERALD PARKER, JOHN BOYCE, GERALDINE MAGALNICK, PATRICK HARRINGTON, PETER KIRSCHNER, and STARK WINTER SCHENKEIN & CO., LLP,<br><br>          Defendants. | 8:07CV254<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendant Stark Winter Schenkein & Co., LLP's reasserted motion to dismiss for lack of jurisdiction, Filing No. 22 (reasserted in Filing No. 182). This is a purported class action for securities fraud under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa, 78j(b), 77o and 78t(a); and Rule 10b-5, 17 C.F.R. § 240.10b-5. In their Amended Complaint, plaintiffs allege that the

various defendants, who are investment advisors, broker-dealers, control persons, investment companies, and an accounting firm, engaged in a scheme of securities fraud, violated federal securities laws, and made material fraudulent and misleading misrepresentations and omissions. Filing No. 161, Amended Complaint. Plaintiffs further allege that they relied on the misrepresentations and were injured by the sale of securities of defendants American Capital Corporation ("ACC") and Royal Palm Capital Group, Inc. ("Royal Palm"). *Id.* at 41.

Defendant Stark Winter Schenkein and Company ("Stark Winter") is an accounting firm alleged to have prepared the audited financials for ACC that were disseminated to the plaintiffs. *Id*. at 8-9. It moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and alternatively moves for a transfer of venue to the District of Colorado. In the event of a ruling favorable to Stark Winter, plaintiff seek severance and transfer of their claims against Stark Winter to the United States District Court for the District of Colorado under 28 U.S.C. § 1406 and Fed. R. Civ. P. 21. *See* Filing No. 128 (stating that the transfer of venue issue will be addressed in the ruling on Stark Winter's motion to dismiss).

**I. BACKGROUND**

With respect to defendant Stark Winter (hereinafter, sometimes referred to as "the accounting firm" or "the auditor"), plaintiffs allege that Stark Winter is a Colorado limited liability partnership of public accountants, with its main office located in Denver, Colorado, and a satellite office in Bradenton, Florida. Filing No. 161, Amended Complaint at 8. Plaintiffs allege Stark Winter began providing accounting and auditing services to ACC in late 2002 and that services continued after ACC merged with defendant Royal Palm until late 2005. *Id.* at 39-40. Plaintiffs further allege that Stark Winter "issued its report of independent auditors, which was disseminated to the Class, containing the audit of ACC's

consolidated balance sheet, consolidated statements of operations, stockholder's deficit and cash flows for the years ended December 31, 2002, and 2003" stating that "in our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of American Capital Corporation as of December 31, 2003, and results of its operations and its cash flows for the years ended December 31, 2003, and 2002, in conformity with accounting principles generally accepted in the United States of America." *Id.* at 39-40. According to the Amended Complaint, ACC invested $250,000.00 for stock in JSM Capital Holding Corporation ("JSM"), a New York broker-dealer. *Id.* at 13. Stark Winter's report reflected a value of $250,000.00 for "'investments in private entities' relating to ACC's investment in JSM." *Id.* Plaintiffs allege that Stark Winter "learned or was reckless in not learning that the JSM investment had virtually no value" and also knew or should have known that the report was to be disseminated to the class. *Id.* at 40-41.

Plaintiffs also allege that the material misrepresentations and omissions in the financial statement induced the plaintiffs to purchase and convert the securities and the plaintiffs justifiably relied on the representations. *Id.* at 41. Plaintiffs further allege that defendants Rebecca Engle, Brian Schuster and Engle & Schuster Financial, Inc., provided the names of Stark Winter and its principal, Neal Winter, to clients as references in connection with the sale of ACC investments. *Id.* at 14.

Stark Winter argues that it has no continuous and systematic contacts with Nebraska and has not had any contact with Nebraska related to the plaintiff's cause of action. In support of its motion, Stark offers the affidavit of Neil Winter, a partner in the Stark firm and a certified public accountant. See Filing No. 26, Index of Evidence ("Evid."), Affidavit of Neil Winter ("Winter Aff."). In the affidavit, Winter states that the Stark Winter firm does business in Colorado and Florida and has never maintained an office in the State of Nebraska, has never owned property in Nebraska, has no employees in Nebraska, has

not advertised in Nebraska, and presently has no clients in Nebraska. *Id.* at 2. Winter also states that the firm once had a client in Nebraska, but that most of the work performed for that client was performed in Colorado. *Id.* Winter further states that it had no contact with defendant ACC in Nebraska. *Id.* Further, Winter states that the accounting work was not intended to be used, nor to the best of Stark Winters's knowledge was it used regarding the sale of debt or equity securities. *Id.* at 3.

The parties conducted jurisdictional discovery on the issue. Filing No. 128, Order. Plaintiffs have submitted evidence that Stark Winter performed accounting services for a client in Nebraska in 2001. Filing No. 187, Plaintiffs' Index of Evidence ("Evid."), Exhibits ("Exs.") 1, Index of Evid., Ex. 1, Deposition of Wesley Stark ("Stark Dep.") at 8-9, 36-37; Ex. 2, Answers to Interrogatories at 3. In 2001, Neil Winter traveled to Gering, Nebraska, for several days in connection with services rendered to that client. *See id.*, Stark Dep. at 10-11. In 2002, Winter and Ed Schenkein, another Stark Winter principal, traveled back to Gering, Nebraska, for approximately four days to conduct additional field work for the client. *Id.* at 14. In addition, Stark Winter sent communications and transmissions, including billing invoices, to Nebraska in 2001 and 2002 via mail, fax and e-mail. *Id.* at 10-11, 14-15. Stark Winter's Nebraska client later relocated to Colorado and Stark Winter continued to perform accounting services for the client from 2003-2007. *Id.* at 36-37. The firm prepared tax returns for the client that were filed with the Nebraska Department of Revenue in Lincoln, Nebraska. *Id.* at 35-36. The firm's client list indicates that it had another client, Michael Tracy, located in Nebraska until 2006, although it is disputed whether the firm actually performed work for that client. See *id.* at 48-51.

In addition, the evidence establishes that Stark Winter prepared financial statements for ACC. *Id.* at 26-27. In connection with performing that service, Stark Winter was in possession of documents, including spreadsheets, subscriber lists, private placement

4

memoranda, and client lists, that showed that a significant number of ACC's investors and brokers were located in Nebraska. *Id.* at 19-20, 41; Deposition Exs. 1 & 2, Broker/Subscriber Lists. The evidence also shows that the firm directed correspondence to the shareholders and directors of ACC, including an "Accountants Compilation Report." *See* Filing No. 187, Index of Evid., Ex. 4, Accountants Compilation Report. ACC is described in the report as "a development stage company" with intent "to invest its capital in various business opportunities." *Id.* at 1-2. The report includes a "Statement of Stockholder's Equity" that lists a category of "shares issued to private placements for cash at $2.00 per share." *Id.* at 4. In notes appended to the report, Stark Winter indicates that ACC was authorized to issue stock, issued stock, and "commenced a private placement of . . . shares at $2.00 per share." *Id.* at 9. Stark Winter reported that "as of December 31, 2002 the company sold 2,126,500 Class B shares for cash aggregating $4,253,001 and paid or accrued commissions aggregating $437,287." *Id.* The evidence also shows that Stark Winter received payments from defendant Royal Palm. *Id.*, Ex. 6, Royal Palm Bank Statements at 13, 36, 38.

## II.  DISCUSSION

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor." *Id*. If jurisdiction is controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th

Cir. 2008). A plaintiff's prima facie showing case must be tested, not by the pleadings alone, but by the affidavits and exhibits presented in support and in opposition to the motion. *Coen,* 509 F.3d at 905.

A federal court may assume jurisdiction over a defendant only to the extent permitted by the state's long-arm statute and by the Due Process Clause of the Constitution. *Coen*, 509 F.3d at 905. Nebraska's long-arm statute allows this court to exercise personal jurisdiction over a person who: (1) transacts any business in the state; (2) contracts to supply services or things in the state; (3) causes tortious injury by an act or omission in the state; and (4) causes tortious injury in the state by an act or omission outside the state if the person regularly does or solicits business in the state. *See* Neb. Rev. Stat. § 25-536 (a)-(d). Since Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the issue is whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001).

Due process requires a defendant to have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 475 (1985). The Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "Minimum contacts must exist at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro*, 340 F.3d at 562; *Clune v. Alimak Ab*, 233 F.3d 538, 544 n.8 (8th Cir. 2000). The minimum contacts must be such that "the defendant purposely avails itself of the privilege of conducting activities within the

6

forum state and it reasonably anticipates being haled into court there." *Burger King,* 471 U.S. at 475; *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 818 (8th Cir.1994). By a defendant's reasonable anticipation, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Bell Paper Box, Inc.,* 22 F.3d at 818-19.

Courts "have established 'a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Coen,* 509 F.3d at 905 (*quoting Bell Paper Box, Inc.* 22 F.3d at 819). Factors one through three are primary. *Id.; Pecoraro,* 340 F.3d at 562 ("The first three factors are closely related and are of primary importance, while the last two factors are secondary.").

The Supreme Court recognizes two theories for evaluating personal jurisdiction: general and specific jurisdiction. *Steinbuch,* 518 F.3d at 586; *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-415 (1984). "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state." *Id.* Specific jurisdiction occurs when "the defendant has purposefully direct[ed] its activities at residents of the forum state" and litigation results from alleged injuries arising out of or relating to those activities. *Steinbuch,* 518 F.3d at 586. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose. *Coen,* 509 F.3d at 905. In assessing whether specific jurisdiction exists over the defendants, "[a]t a minimum . . . [the

7

court] will consider the last two of the primary factors—the nature and quality of the contacts, and [their] source and connection to the cause of action." *Id.*

With respect to intentional torts, a defendant must reasonably anticipate being haled into court in a particular forum where its intentional and allegedly tortious actions were aimed and where the injured party receives the brunt of the injury resulting from the conduct. *Calder v. Jones*, 465 U.S. 783, 789-790 (1984) (stating "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California"). Thus, a claim of jurisdiction can be based on the "'effects' test that allows the assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998). "Although [a] defendant's lack of control over the injurious result may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when an injured party has alleged an intentional tort." *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991); *see also Coen,* 509 F.3d at 905 (finding jurisdiction proper over defendants who send false or misleading communications to a plaintiff in a forum while intending to promote commercial activity there)*; Oriental Trading Co. v. Firetti,* 236 F.3d at 943 (defendants initiated business relationship with forum resident and made numerous misrepresentations in phone calls and faxes); *Finley,* 148 F.3d at 916. (defendants sought to generate ticket sales at concert in forum by making misrepresentations to forum-based concert promoter). *Calder* is not satisfied, however, where a defendant's activities are directed elsewhere, or where the contact with the forum state is only incidental. *See Hicklin Eng'g v. Aidco, Inc.*, 959 F.2d 738, 738 (8th Cir. 1992) (defendant's letters to plaintiff's out-of-state customers did not allow jurisdiction in forum where plaintiff resided); *General Elec. Capital Co. v. Grossman,* 991 F.2d 1376, 1387 (8th Cir. 1993) (no jurisdiction over foreign auditors who sent financial statements of

Canadian company to its Minnesota purchaser for inclusion in purchaser's own financial statement).

A district court may nevertheless transfer any civil action—for the convenience of the parties and witnesses or in the interest of justice—to any other district in which it could have been brought. 28 U.S.C. § 1404(a). This provision was drafted in accordance with the doctrine of *forum non conveniens*, permitting transfer to a more convenient forum, even though venue is proper. *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 n.2 (8th Cir. 1997). A plaintiff's choice of his home forum is usually accorded great deference and will not be disturbed unless the balance of private and public factors heavily indicate another forum. *Piper v. Reyno*, 454 U.S. 235, 255-256 (1981). Generally, transfer under § 1404(a) "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982). When deciding a motion to transfer venue under the doctrine of *forum non conveniens*, courts must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). A district court is directed to take account of factors other than those that bear solely on the parties' private ordering of their affairs; it also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).

### III. ANALYSIS

The court finds that the evidence, viewed in the light most favorable to the plaintiffs, shows that both general and specific jurisdiction over Stark Winter is proper in this case. With respect to general jurisdiction, the plaintiffs have presented evidence that Stark Winter at one time had a client or clients in Nebraska and had some physical presence in

Nebraska. Plaintiffs have also shown that Stark Winter has continuing contact with Nebraska in that it files tax returns in the state on behalf of its client.

Plaintiffs have also presented evidence that relates to specific jurisdiction. The plaintiffs have shown that Stark Winter prepared financial statements for ACC. In connection with performing that service, Stark Winter was in possession of documents including spreadsheets, subscriber lists and client lists that showed that a significant percentage of ACC's investors and brokers were located in Nebraska. Stark Winter also authored a report specifically directed at the directors and shareholders of ACC, which would include the plaintiff shareholders.

The documents in Stark Winter's possession at the time it prepared the financial statements for ACC indicate that Stark Winter, as ACC's accountant and auditor, knew that ACC was a company that invested in various business opportunities, that it was authorized to issue stock, and was seeking or soliciting investors for private placements. Stark Winter was in possession of documents showing that brokers and potential investors were located in Nebraska, as well as in other states. Stark Winter knew or should have known that its reports and financials would be disseminated to people outside of ACC's home state of Florida. In fact, Stark Winter issued a report specifically directed to ACC's shareholders, which would include the plaintiffs. Stark Winter knew or should have known that the financial statements it prepared would be disseminated in Nebraska. The court finds sufficient minimum contacts with the state of Nebraska to satisfy due process requirements. By virtue of performing accounting services and auditing functions for a corporation that it knew or should have known had numerous shareholders and investors in Nebraska, Stark Winter should reasonably have anticipated being haled into court in this state.

Accordingly, the court finds that the plaintiffs have shown that this court has personal jurisdiction over Stark Winter.

In connection with the motion to transfer venue to Colorado, the court finds that Stark Winter has not shown that the convenience of the parties and witnesses or the interests of justice would favor a transfer.

IT IS HEREBY ORDERED:

1. Defendant Stark Winter's motion to dismiss for lack of jurisdiction (Filing No. 22, reasserted in Filing No. 182) is denied.

2. Defendant Stark Winter shall answer or otherwise respond to the plaintiffs' Amended Complaint on or before **June 3, 2009.**

3. Pursuant to Filing No. 238, defendant Stark Winter shall respond to plaintiffs' motion to certify the class on or before **May 28, 2009.**.

DATED this 14th day of May, 2009.

BY THE COURT:

s/Joseph F. Bataillon
Chief District Judge