IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYLE BREHM, on behalf of Willard F. Brehm, Gladys M. Brehm, the Willard F. Brehm Revocable Trust and the Gladys M. Brehm Revocable Trust, REX WELDON, on behalf of Nancy Weldon, Robert Clark Weldon and the Robert Clark Weldon and Nancy Weldon Trust, JILL SCHUNEMAN, on behalf of herself and the Jill Schuneman Living Trust, and DAVID BUCKLEY, on behalf of himself, the Robert L. McKissick Irrevocable Trust and the Brenda L. Buckley Revocable Trust, collectively on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br>   v.<br><br>CAPITAL GROWTH FINANCIAL, LLC, BRIAN SCHUSTER, ENGLE & SCHUSTER FINANCIAL, INC., AMERICAN CAPITAL CORPORATION, ROYAL PALM CAPITAL GROUP, INC., ALAN JACOBS, MICHAEL JACOBS, GERALD PARKER, JOHN BOYCE, GERALDINE MAGALNICK, PATRICK HARRINGTON, PETER KIRSCHNER, and STARK WINTER SCHENKEIN & CO., LLP,<br><br>           Defendants. | 8:07CV254<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiffs' motion for final approval of a proposed partial settlement agreement with defendants Alan and Michael Jacobs (hereinafter, "the Jacobses") and Capital Growth Financial, LLC (hereinafter, "CGF"), Filing No. 272. This is a class action for securities fraud pursuant to 15 U.S.C. § 77 et seq.

I.  Facts

The case has been certified as a class action. Filing No. 299, order approving class; Filing No. 311, order approving notice of class certification. This court preliminarily approved the proposed partial settlement agreement with defendants CGF and the Jacobses and approved notice of the settlement and fairness hearing thereon. Filing No. 302, order preliminarily approving proposed partial settlement; Filing No. 321, order approving notice; Filing No. 277, proposed partial settlement agreement. The Notice of the Proposed Partial Settlement of Class Action & Fairness Hearing was provided to members of the class by first class U.S. mail. Filing No. 322, certificate of service.

A fairness hearing was held on January 26, 2009. Filing No. 332, text minute entry. Attorneys Gregory C. Scaglione, J.L. Spray and James Cavanagh appeared as co-lead counsel for the lead plaintiffs and Randall L. Goyette appeared on behalf of defendant Stark Winter Schenkein and Company. Notices of possible intent to appear or to opt out were filed by several individuals. Filing No. 326, notice of intent to participate by defendant Rebecca Engle; Filing No. 330, Notice to elect out of class action by Jean Campbell; Filing No. 327, notice to elect out of class action by Roger D. Alger as Trustee for Charles H. Reece Charitable Remainder Unitrust #3; Roger D. Alger as President of Custom Diesel Drivers Training, Inc.; Richard and Emilie Dick, husband and wife; Lucille L. Eads as Trustee of her 401K; Kristi Madsen; and Douglas A. Dick. None of these individuals appeared at the fairness hearing, but the court was advised by lead plaintiffs' counsel that seven individuals have opted out of the class. There are no objections to the proposed partial settlement agreement.

The settlement agreement will settle lead plaintiffs' claims against the Jacobses and CGF. Filing No. 277, Settlement Agreement. The Jacobses are the principals of CGF. The agreement provides for payment of insurance coverage proceeds in the amount of

$646,160 by Quanta Specialty Lines Insurance Company (hereinafter, "Quanta") on behalf of the Jacobses and CGF.[1]  *Id.* at 5.  The agreement further provides for payment of certain arbitration awards and attorneys' fees by the Jacobses individually or as deductions from the insurance policy.  *Id.* at 5-7.  It also provides that the Jacobses will cooperate with the plaintiffs by providing testimony, documents and information regarding the plaintiffs' claims against nonsettling defendants in this class action and in pending arbitration actions.  *Id.* at 6, 9.  Plaintiffs will also receive the benefit of the assignment of CGF's and the Jacobses' potential claims for coverage or bad faith against Zurich Financial Services, Lloyd's of London, and Wachovia.  *Id.* at 5.

In consideration of those payments and cooperation agreements, plaintiffs agree to dismiss, without prejudice, the claims identified in the class action against the Jacobses and CGF, as well as claims in several pending arbitration actions.  *Id.* at 7-8.  The plaintiffs reserve the right to reinstitute the action should the Jacobses' representations as to their financial condition prove untrue or change and further reserve the right to assert claims against the settling parties to the extent the recovery would be payable from insurance proceeds issued to the settling parties other than insurance issued by Quanta.  *Id.* at 4, 8-10.  The claims against the Jacobses and CGF will be released with prejudice and forever barred upon the conclusion of the prosecution of the class action and pursuit of the assigned claims.  *Id.* at 8.  The settlement funds have been deposited in the trust account of Mattson Ricketts Law Firm which is held at First National Bank of Omaha.  Filing No. 276, Affidavit of J.L. Spray at 4-5.

---

[1] This amount represents what is left of CGF's one-million-dollar insurance policy after payment of its attorneys' fees for all of the pending arbitration actions listed in the Settlement Agreement and payment of other pending settlement amounts and judgments.

Counsel for lead plaintiffs represent 165 of the 190 members of the class. The plaintiffs have shown that the proposed partial settlement is the product of several months of arm's-length negotiations. *See* Filing No. 275, Affidavit of Gregory C. Scaglione at 2-3. The parties have also participated in mediation. *Id.* at 2. Plaintiffs have investigated the financial condition of both CGF and the Jacobses to ensure that the proposed settlement represents the optimal recovery. *Id.* at 3-4. Counsel negotiated a term in the Settlement Agreement that allows lead plaintiffs to modify, adjust or cancel the Settlement Agreement if the financial disclosures reveal a material change in the Jacobses' personal financial circumstances in order to provide added protection to the class. *Id.* Importantly, the plaintiffs have also shown that securing the cooperation of the Jacobses will be beneficial in prosecuting the claims asserted against the non-settling defendants. *Id.* The proposed settlement falls well within a range of what is considered fair, reasonable and adequate in that it amounts to approximately 3% of the total damages of 20 million dollars sought by the class, which compares favorably to the average recovery of 5%-6% in securities fraud class action.

The notice of proposed partial settlement disseminated to the class included a statement that plaintiffs' lead counsel would ask the court "to award fees not to exceed one-third of the partial settlement fund" in the amount of $215,386, plus reimbursement of expenses in the amount of $2,823.80. The court is advised that lead plaintiffs have agreed to a contingency fee. Plaintiffs seek approval of an award of fees and costs in that amount and suggest that the remaining balance of the settlement funds be maintained in an interest bearing escrow account, designated as a cost and expense fund for the Class, until further order of the court.

II.   Law

In approving a class settlement, the district court must consider whether it is fair, reasonable, and adequate. *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995). A district court is required to consider four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 931 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id.* at 933 (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) (internal quotations omitted)). A court may also consider procedural fairness to ensure the settlement is "not the product of fraud or collusion." *Id.* at 934. The experience and opinion of counsel on both sides may be considered, as well as whether a settlement resulted from arm's-length negotiations, and whether a skilled mediator was involved. *See DeBoer*, 64 F.3d at 1178. A court may also consider the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits. With respect to notice, due process is satisfied where class members receive notice of a settlement proposal and are able to argue their objections to district court. *Id.* at 1176.

A thorough judicial review of fee applications is required in all class action settlements. *In re Diet Drugs*, 582 F.3d 524, 537-38 (3d Cir. 2009); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)(noting that the district court bears the responsibility of scrutinizing attorney fee requests). Courts utilize two main approaches to analyzing a request for attorney fees: (1) the "lodestar" methodology (multiplying the hours

expended by an attorneys' reasonable hourly rate of compensation to produce a fee amount that can be adjusted to reflect the individualized characteristics of a given action); and (2) the "percentage of the benefit" approach (permitting an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation). *Johnston,* 83 F.3d at 244-45. Which method to apply is within the district court's discretion. *Id.* Courts have approved the percentage-of-recovery methodology to evaluate attorneys' fees in common-fund settlement class action cases. *In re US Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (approving an award of 36% of the settlement fund); *Petrovic,* 200 F.3d at 1157 (approving award of 24% of monetary compensation to the class). To recover fees from a common fund, attorneys must demonstrate that their services were of some benefit to the fund or that they enhanced the adversarial process. *In Re US Bancorp Litig.,* 291 F.3d at 1038.

   III.   Analysis

The court finds that the requirements of due process have been met as to the method and content of the notice to the class members. The court has reviewed the notices and proofs of service and finds them satisfactory. The court further finds that the partial settlement agreement is fair and reasonable. Based on the court's familiarity with the case and exposure to the issues throughout the course of this litigation, the court concludes that the proposed partial settlement is within the range of potential outcomes in this case. The strength of plaintiffs' case against these defendants is tempered by the potential that the class could not collect a judgment because of the defendants' financial condition and the dissipation of the insurance proceeds in other litigation. In addition to providing a substantial fund to provide compensation to class members, the proposed settlement provides the equally important benefit of ensuring the cooperation of the settling defendants in further litigation against the nonsettling parties. The ratio of the amount

recovered to the amount of the claim is in line with settlements and awards in other securities fraud litigation.  Further, there is no opposition to the partial settlement.  The court finds the settlement is fair, reasonable, adequate and in the best interests of the class.  Accordingly, the court finds that the settlement should be approved.

The settlement agreement provides for attorneys' fees in the amount of $215,386 representing one-third of the value of the partial settlement amount.  The requested fees were fully disclosed in the notice of settlement and no class members have objected to the proposed settlement. Plaintiffs have demonstrated that counsels' services have benefitted the class.  Based on its familiarity with the litigation, a fee of approximately 33% of the monetary benefits recovered thus far seems reasonable.[2]  The court finds that plaintiffs' requested attorneys' fees and costs should be approved and fees and costs should be awarded.  Accordingly,

IT IS ORDERED:

1. The plaintiffs' motion for final approval of proposed partial settlement agreement (Filing No. 272) is granted.

2. The proposed partial settlement agreement with defendants Capital Growth Financial and Alan and Michael Jacobs (Filing No. 277) is approved and incorporated herein by reference.

3. Attorneys' fees in the amount of $215,386 and costs in the amount of $2,823.80 are approved and awarded.

4. Co-lead counsel may withdraw attorneys' fees in the amount of $215,386.00, plus costs in the amount of $2,823.80, from the settlement proceeds

---

[2]The court does not mean to suggest that this rate is appropriate with respect to attorneys' fees for funds remaining to be recovered.  Future fee applications will be considered on their individual merits.

maintained in Mattson Ricketts' interest-bearing trust account at First National Bank in Omaha, Nebraska.

5. The remaining balance of the settlement proceeds shall be held in one or more trust accounts of the co-lead counsel for the plaintiffs.

6. Co-lead counsel may apply to the court for use of those funds to cover any litigation expenses associated with pursuing this action against the remaining defendants.

7. Unless otherwise ordered by the court, the remaining settlement proceeds shall be held in trust for eventual distribution to the class members.

8. Nothing in this order is intended to waive, release or discharge any claims against the remaining defendants.

DATED this 4th day of February, 2010.

BY THE COURT:

s/Joseph F. Bataillon
CHIEF DISTRICT JUDGE

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.